IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAMON MATOS MUÑIZ,

    Plaintiff,

        v.           CIVIL NO.: 10-1637 (MEL)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Ramón Matos-Muñiz ("plaintiff" or "claimant") was born on September 20, 1965. (Tr. 62.) He has an eighth grade education and worked as a carpenter assistant from 1995 to February 1, 2003. (Tr. 63, 78, 83, 292.) Plaintiff alleges that he suffers from back pain, chest angina, high blood pressure, sinus, and ulcer as well as depression. (Tr. 77.) The depression, plaintiff claims, was triggered by finding out that his daughter had been beaten after he could not see her for six months following his separation from his first wife. (Tr. 77, 292.)

On June 9, 2004, plaintiff filed an application for disability insurance benefits, alleging disability beginning February 1, 2003; the end of plaintiff's insurance period was December 31, 2005. (Tr. 16, 18.) Plaintiff's application for social security benefits was denied initially on February 28, 2005 as well as upon reconsideration on October 8, 2005. (Tr. 16.) After plaintiff's timely written request was granted, a hearing took place before an Administrative Law Judge ("ALJ") on May 15, 2008. (Tr. 16, 287-305.) Plaintiff attended the hearing with an attorney representative and testified regarding his alleged disability. (Tr. 290-99.) On June 25, 2008, the ALJ rendered a decision denying plaintiff's claim. (Tr. 10-23.) The Appeals Council

denied plaintiff's request for review of the ALJ's decision on May 20, 2010; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). (Tr. 5-7.)

On July 12, 2010, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), claiming that the ALJ's decision was not based on substantial evidence. (Docket No. 1.) On December 14, 2010, defendant filed both an answer and a certified transcript of the administrative record. (Docket Nos. 10; 11.) Both parties have submitted supporting memoranda. (Docket Nos. 18; 21.)

## II.  LEGAL STANDARD

### A.  Standard of Review

Once the Commissioner has rendered his final determination on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner [ ] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere

2

scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).  Moreover, a determination of substantiality must be made based on the record as a whole.  See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability Under the Social Security Act

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987).  An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42. If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the claimant is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the claimant's impairment or impairments prevent her from doing the type of work he or she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

---

[1] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

4

Under steps one through four, the plaintiff has the burden of proving that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

### III. THE MEDICAL EVIDENCE CONTAINED IN THE RECORD

The certified medical record contains, *inter alia*, the following medical evidence regarding plaintiff's conditions:

Dr. Pedro Vélez was plaintiff's treating physician between November 15, 2001, and March 15, 2008. (Tr. 265-71). Dr. Vélez reported on March 15, 2008, that plaintiff could only lift and carry less than ten pounds occasionally, could stand and/or walk for less than two hours and could sit for less than six hours in an eight-hour workday. (Tr. 272-73.) In addition, plaintiff was limited in reaching, handling, fingering and feeling and could occasionally balance, kneel, and stoop. (Tr. 273.) Finally, in his report, dated March 15, 2008, Dr. Vélez diagnosed plaintiff with severe anxious state, severe depressed state, chronic gastritis, severe reflux with esophagitis, and chronic insomnia, and deemed plaintiff's prognosis "poor." (Tr. 268.)

Dr. Michael Babilonia Román, a rheumatologist, examined plaintiff on September 21, 2004. Dr. Babilonia found that plaintiff had excellent motor strength and a normal range of motion in all joints, except for restriction in the range of movement of the lumbar spine. Dr. Babilonia concluded that plaintiff had a "nervous condition and low back pain." (Tr. 155.)

Dr. Armando Caro, a consulting psychiatrist, performed a psychiatric evaluation of plaintiff on September 24, 2004. (Tr. 21, 164.) Dr. Caro found that plaintiff did not handle money, plaintiff did not attend social activities, and his wife handles the daily house chores. Id. Plaintiff showed impaired concentration, depressed mood, blunt affect, and marked psychomotor

retardation. However, plaintiff was oriented in time, place and person; and his speech was fluent, coherent and logical. (Tr 165.) Finally, Dr. Caro observed that plaintiff's judgment and insight were poor, his abstract thinking and capacity for social interactions impaired and had no capacity to handle his own funds. Id.

Dr. Orlando E. Reboredo, a clinical psychologist, prepared a Mental Residual Capacity Assessment based on the evidence on file on December 21, 2004. (Tr. 169.) Dr. Reboredo concluded that the claimant suffers from depression and anxiety, but had no thought or perceptual disorders. (Tr. 172.) Furthermore, Dr. Reboredo indicated that plaintiff "can learn, understand, remember and execute at least simple instructions." Id. Based on the evidence on file, Dr. Reboredo concluded that plaintiff can sustain pace and attention, or persist at work activities during a regular workday or workweek. Id. Plaintiff can also carry on work activity without special supervision, can interact with public, coworkers and supervisors and can adjust to changes in work routines and environments. Id.

Dr. Osvaldo Rivera Marrero, a family physician, performed a Physical Residual Functional Capacity Assessment for plaintiff on January 12, 2005, based on the evidence on file. (Tr. 188-89.) Dr. Rivera concluded that plaintiff can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an eight-hour workday, and push and/or pull without limitations, except for those mentioned earlier. (Tr. 189.)

Plaintiff was referred to Dr. Eleuterio Loperena, an internal medicine specialist, by the Disability Determination Program for an appointment on August 25, 2005. (Tr. 201.) Dr. Loperena found that, although plaintiff's wife helped him with moving around the doctor's office and changing his clothes, plaintiff had the ability to stand, sit, walk, and carry. (Tr. 204.)

In his report, Dr. Loperena diagnosed plaintiff with back pain syndrome and found a history of discogenic disease, back spur, angina, chronic gastritis, and a psychiatric disorder. (Tr. 205-06.)

The Disability Determination Program also referred plaintiff to Dr. Alberto Rodríguez Robles, a psychiatrist, for an evaluation on September 14, 2005. (Tr. 220.) Dr. Rodríguez diagnosed plaintiff with Severe Major Depression. (Tr. 222.) In his assessment, Dr. Rodríguez observed that plaintiff was groomed and well nourished, had a logical and coherent thought, adequate memory, no perceptual problems and no suicidal ideas. (Tr. 222.) Dr. Rodríguez, however, noted that plaintiff had diminished attention and concentration, impaired social functioning, psychomotor retardation, an inability to handle his own funds, and a "poor" prognosis. (Tr. 219, 222-23.)

Plaintiff received treatment for his mental health disorders at the División de Salud Conductual of the Ponce School of Medicine between March 8, 2004, and July 23, 2007; the record contains the progress notes from plaintiff's appointments. (Tr. 20, 238, 249.) Dr. Japhet Gaztambide was one of plaintiff's treating psychiatrists at that facility starting on April 21, 2004. (Tr. 276.). In addition, the record contains a Psychiatric Medical Report and a Medical Source Statement of Ability to do Work-Related Activities (Mental), prepared by Dr. Gaztambide on April 23, 2008.[2] (Tr. 276-81.)

IV.   LEGAL ANALYSIS

The ALJ's decision reflects an application of the final step of the five-step evaluation process set forth in the Social Security Agency's regulations. See 20 C.F.R. § 404.1520. In this step, the ALJ determines whether plaintiff's impairments prevents him from making an adjustment to other work, considering plaintiff's RFC, age, education, and work experience. Id.

---

[2] According to the ALJ, this report "cannot be considered for purposes of this analysis and evaluation," because it was created more than two years after the claimant's insurance period elapsed. (Tr. 21.) Plaintiff contests this determination. (Docket No. 18, at 10-11.); see discussion infra Part IV(B).

7

Here, the ALJ concludes that, because of plaintiff's severe exertional and non-exertional limitations—low back pain and depression—plaintiff's RFC was limited to light, unskilled work.[3] (Tr. 18.) Because of the non-exertional limitations, the ALJ asked a vocational expert whether there were jobs in the national economy for a person with plaintiff's age, education, work experience, and RFC. (Tr. 23.) The ALJ's opinion refers to testimony from the vocational expert about the availability of representative occupations which involve light, unskilled work and do not require activities precluded by plaintiff's RFC. Id. Thus, the ALJ concluded that plaintiff is not disabled.

Plaintiff claims that the ALJ improperly afforded no controlling weight to the opinions of consulting examining psychiatrists Dr. Caro and Dr. Rodríguez, and improperly discarded the treating psychiatrist Dr. Gaztambide's report for purposes of the RFC analysis. (Docket No. 18, at 9-12.) Moreover, plaintiff claims that because the ALJ did not credit the psychiatrists' reports, the ALJ was left without support for his own finding that plaintiff's mental impairment "moderately restricted" his daily activities and provoked "mild difficulties in maintaining social functioning." (Tr. 21.) In addition, plaintiff argues that the ALJ was in error when he presented the vocational expert, Camilo Gutiérrez Cruz, with a hypothetical that did not give controlling weight to the examining and treating psychiatrists' opinions. (Docket No. 18, at 9-12.) Thus, plaintiff contends, the hypothetical presented to the vocational expert from which to base the disability determination was incomplete. Id.

---

[3] First, light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Second, light work might also involve "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." Id. Unskilled work requires "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling ("SSR") 85–15, 1985 WL 56857 (S.S.A.1985), at *4.

### A.     Decision Not to Give Controlling Weight to Examining Psychiatrists' Reports

As an initial matter, conclusions as to whether a claimant is "disabled" and related legal conclusions are administrative decisions that are to be made by the Commissioner, not by medical personnel. 20 C.F.R. § 404.1527(e); see Rivera v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 1493, at *14-*16 (D.P.R. Jan. 8, 2010) ("[W]hile [his physician] believed that [c]laimant was disabled and unable to work, disability under the Act is a legal determination that is reserved to the ALJ, and medical experts are not qualified to render this ultimate legal conclusion.") (citing Frank v. Banhart, 326 F.3d 618, 620 (5th Cir. 2003) (internal citation omitted)). Therefore, the ALJ's decision to give no controlling weight to the opinions of Dr. Caro and Dr. Rodríguez is not necessarily legally improper. (Tr. 21); see 20 C.F.R. § 404.1527(e).

Plaintiff argues that the ALJ improperly gave no controlling weight to the examining psychiatrists' medical reports and was left without support for his own finding that plaintiff's mental impairment "moderately restricted" his daily activities and provoked "mild difficulties in maintaining social functioning." (Tr. 21.) Plaintiff's claims are not sustained by the record. The ALJ gave the consulting psychiatrists' reports no controlling weight because their medical opinions were "not consistent with the other substantial evidence of record, including their own reported findings and the treating sources' progress notes."[4] (Tr. 21) The ALJ based his opinion on the following findings. Plaintiff received treatment for his mental health disorders at the División de Salud Conductual of the Ponce School of Medicine between March 8, 2004, and July 23, 2007. (Tr. 20, 238, 249.) The ALJ observed that the progress notes from plaintiff's appointments at that facility first reflected that "the claimant complained of sleep disturbance,

---

[4] The ALJ also indicated that the reports were "not well supported by medically acceptable diagnostic techniques." (Tr. 21.) The ALJ, however, provided no analysis or examples to support this statement. Nevertheless, the ALJ's other findings, described below, constitute substantial evidence in support of his decision to give no controlling weight to the reports of Dr. Caro and Dr. Rodríguez.

9

anxiety and restlessness." (Tr. 21.)  However, by the date of the last appointment during the period at issue, October 18, 2005, the progress notes "showed that the claimant was well groomed, cooperative, calm, euthymic mood, appropriate affect, normal speech, no cognitive difficulties, intact thought process and no suicidal or homicidal ideas."  Id.  Furthermore, the ALJ observed that by then, the treating psychiatrists at that facility noted that plaintiff was stable and recommended a follow up visit three months later.  Id.  These progress notes contrast with the severity of the depressed mood, short attention span, impaired social interactions, psychomotor retardation, inability to handle funds and "guarded" or "poor" prognosis reported by both Dr. Caro and Dr. Rodríguez.  (Tr. 164-65, 220-22.)  Moreover, both consulting psychiatrists also found that the claimant was well groomed, logical, coherent, with preserved memory, and no suicidal or homicidal ideas.  Id.

Ultimately, it is the ALJ's responsibility "to determine issues of credibility and to draw inferences from the record evidence."  Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  "The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing [c]ourts."  López-Vargas, 518 F. Supp. 2d at 335 (citing Perales, 402 U.S. at 399).  Thus, there was substantial evidence in the record, such as the progress notes of the treating physicians at the Ponce School of Medicine, to support the ALJ's decision not to give controlling weight to the consulting psychiatrists' opinions.

### B. Decision to Disregard Reports Created After Expiration of Insurance Status

Plaintiff contends that the ALJ improperly discarded two reports by Dr. Gaztambide, one of plaintiff's treating psychiatrists during plaintiff's insured period.[5]  The ALJ states simply that

---

[5] Plaintiff's onset date was February 1, 2003, while his last insured date was December 31, 2005.  (Tr. 18.)  Ten of eighteen visits with Dr. Gaztambide were within the insured period.  (Tr. 276.)

10

they "cannot be considered" because they were dated "more than two years after the claimant's insured status for disability purposes expired." (Tr. 21.) In support of the ALJ's position, defendant cites Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136 (1987). (Docket No. 21, at 12.) Evangelista is distinguishable from the present case, however, as Dr. Gaztambide was a physician who treated the claimant during the insurance period. See Rivera v. Sullivan, 923 F.2d 964, 969 (1991); Fagon v. Sullivan, No. 88-315, 1989 WL 280336, at *2 (D.Vt., Nov. 21, 1989). In Evangelista, the claimant sought to have his case remanded "for the taking of new evidence." 826 F.2d 136, 138. The claimant in Evangelista sought to introduce a report from a physician who "first appeared on the scene June 10, 1985, subsequent not only to the Secretary's final decision, but some nine months after suit had been instituted in the district court." Evangelista, 826 F.2d at 139. Furthermore, in Evangelista, the court held that the evidence sought to be introduced was not material because claimant "Evangelista last met the Act's earnings requirement on December 31, 1980. "[T]he issue before the ALJ was whether or not the claimant was incapacitated *as of that date*." Evangelista, 826 F.2d at 140 n. 3. Therefore, the physician's "ability to shed light on that issue was seriously curtailed because he never examined the plaintiff until some four and one-half years later." Id.

      To qualify for Social Security disability benefits, a claimant does have the burden to show that she was disabled during the coverage period, which is the time period between the alleged disability onset date and the date last insured. See 42 U.S.C. § 416(i); Alcaide v. Sec'y of Health & Human Servs., 601 F.Supp. 669, 672 (D.P.R. 1985); Sampson v. Califano, 551 F.2d 881, 882 (1st Cir. 1977). Accordingly, evidence that does not pertain to proving disability during the coverage period should not be considered by an ALJ to determine whether claimant is disabled. Nevertheless, "[m]edical evidence generated after a claimant's insured status expires

may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before his insured status expired." Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552, at *5 (1st Cir. 1993) (unpublished) (citing Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir. 1982); Alcaide, 601 F.Supp. at 672-73). Thus, the appropriate standard is whether Dr. Gaztambide's reports would shed light on the question whether plaintiff's impairment reached disabling severity before his insured status expired.

Except with respect to Prompt No. 3 on the Psychiatrist Medical Report ("Prompt No. 3")[6], each portion of the reports either does not indicate whether Dr. Gaztambide was evaluating plaintiff's status before or after December 31, 2005, or asks for the assessment to "be based on the latest interview." (Tr. 276-81.) Dr. Gaztambide saw plaintiff eight times after the expiration of his insurance period and created his reports over two years after expiration. (Tr. 276.) Because the two reports, aside from Prompt No. 3, cannot be determined to relate to plaintiff's impairment before the end of 2005, they do not shed light "on the question whether claimant's impairment reached disabling severity before his insured status expired." Padilla Pérez, 985 F.2d at *5. Thus, the ALJ could disregard the reports to that extent.

Prompt No. 3 is comprised of a list of complaints that plaintiff conveyed to Dr. Gaztambide during the insured period. (Tr. 276.) The ALJ did, however, consider the reports from Dr. Caro, Dr. Rodríguez, Dr. Loperena, and Dr. Vélez, and the progress notes from Dr. Gaztambide.[7] From these sources, the ALJ had an abundance of evidence that plaintiff conveyed to a physician each of the legible symptoms from Prompt No. 3 during the insured period: anxiety/worry (see Tr. 164, 220, 252), restlessness (see Tr. 221, 252), fatigue (see Tr. 220), irritability/agitation (see Tr. 221), muscle tension/aches (Tr. 208.), difficulties

---

[6] Prompt No. 3 specifically asks about "[c]omplaints and findings on the first interview." (Tr. 276.)
[7] The ALJ did not dismiss the progress notes of Dr. Gaztambide at the Ponce School of Medicine from the treatment period (Tr. 247-58); he disregarded Dr. Gaztambide's reports from 2008 (Tr. 276-81).

concentrating (see Tr. 164-65, 221), and difficulties sleeping (see Tr. 164, 252).  (Tr. 276); see also (Docket No. 18, at 6.)  Prompt No. 3 does not meet the standard elaborated under Padilla Pérez; it sheds no additional light regarding plaintiff's alleged disability during his insured status.

### C. RFC Finding

Plaintiff argues that after the ALJ gave no controlling weight to the examining psychiatrists' medical opinions (i.e., Dr. Caro and Dr. Rodríguez) and discarded both of Dr. Gaztambide's reports, the ALJ was left with no RFC analysis for plaintiff's mental health. (Docket No. 18 p. 11.) This led the plaintiff to argue that "the Commissioner's own examining consultant's assessment stand unrebutted." (Docket No. 18, pp. 11- 12.)  Yet the ALJ concluded, *inter alia*, "as a result of the claimant's mental impairment, his daily activities were moderately restricted; and he had mild difficulties in maintaining social functioning."  (Tr. 21.)  The ALJ also found that plaintiff "seldom presented deficiencies of concentration, persistence and pace; and had no episodes of deterioration or decompensation in work or work-like settings." Id.  The ALJ concluded that the aforementioned "limitations precluded the claimant, on a sustained basis, from performing only skilled mental activities, such as requiring the ability to understand, remember and carry out complex and detailed instructions, interact appropriately with the general public or tolerate intensive tension or work pressures." Id.

In support of plaintiff's argument that the ALJ was left without examining psychiatrists' mental RFC assessment and thus had no basis to make his determination, plaintiff cites Rivera Figueroa v. Sec'y of Health & Human Servs., 858 F.2d. 48 (1st Cir. 1988).  This argument is not persuasive.  In Rivera Figueroa, the First Circuit held that the ALJ seemed to have interpreted the medical data himself since there was no RFC analysis from a treating physician and the ALJ was "unaided even by an RFC assessment from a nonexamining doctor."  858 F.2d. at 52.  Unlike Rivera Figueroa, in the present case there is an RFC assessment from a consultant nontreating

13

psychologist, Dr. Reboredo, who examined the record and made a report on December 21, 2004. (Tr. 169-186.) The ALJ based his findings about plaintiff's mental health status on the progress notes from the treating psychiatrists at the División de Salud Conductual and the RFC assessment by Dr. Reboredo. These provided substantial evidence to make a determination that the Dr. Caro's and Dr. Rodríguez's medical reports were not entitled to controlling weight and find that plaintiff's mental impairments were moderate or mild.

### D.     Hypothetical Posed to the Vocational Expert

Plaintiff claims that the vocational expert was given an incomplete hypothetical because the ALJ did not present all of the available mental assessments. (Docket 18, at 12.) Plaintiff contends that this was a material omission. During the hearing held before the ALJ on May 15, 2008, vocational expert Camilo Gutiérrez testified that a person with a RFC limited to light work and mental function limited to mild or moderate would have at least three representative jobs available in the national economy: Wire Worker, Hand Coil Winder, and "Marker Two."[8] (Tr. 300.) In response to questions by plaintiff's representative, the vocational expert testified that, if Dr. Armando Caro's report were to be given credibility, then plaintiff "would not find any place in the national economy in order to do any competitive tasks." (Tr. 302.) Similarly, the vocational expert testified that, if one specifically takes into consideration reports by Dr. Rodríguez, Dr. Gaztambide,[9] and Dr. Vélez, plaintiff would "not be able to perform any other jobs previously mentioned or any other in the Puerto Rican economy or his past profession." (Tr. 304.)

---

[8] According to the vocational expert, this position involves "labeling, marking, or setting on the merchandise the company's brand or any other information or logo using a simple device provided to him." (Tr. 300.)
[9] The testimony specifically concerned the reports by Dr. Gaztambide which were created after the expiration of plaintiff's insured status, not Dr. Gaztambide's progress notes from the Ponce School of Medicine. (Tr. 303.)

14

The ALJ's determination that plaintiff was "not disabled" was "[b]ased on the testimony of the vocational expert and the preponderance of the evidence." (Tr. 23.) The ALJ relied on the vocational expert's finding that there are at least three representative jobs that the claimant could perform in the national market. "Ordinarily, an ALJ's hypothetical questions to a VE must include all limitations supported by medical evidence in the record." Simila v. Astrue, 573 F.3d 503, 520 (2009) (quoting Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002) (internal citation omitted)). Defendant, however, argues correctly that "the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." (Docket No. 21, at 19); Simila, 573 F.3d at 521 (quoting Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007) (internal citation omitted)). In this case, it was appropriate for the ALJ to discard Dr. Gaztambide's reports. See supra Part IV(B). The ALJ had substantial evidence to determine that Dr. Caro's and Dr. Rodríguez's medical opinions should not be granted controlling weight. See supra Part IV(A). Finally, the ALJ had substantial evidence to give reduced weight to Dr. Vélez's report.[10] Thus, the ALJ was not required to incorporate these four reports into the hypothetical presented to the vocational expert.

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of September, 2012.

s/Marcos E. López<br>
U.S. Magistrate Judge

---

[10] The ALJ wrote that "there are no objective findings to support" Dr. Vélez's assessment regarding plaintiff's pain and abilities to lift, carry, stand, and walk. (Tr. 19-20.) Rather, the ALJ pointed out that Dr. Vélez "indicated in his medical report that the claimant had normal motor and sensory system and reflexes, no ataxia, normal gait and station and no limitation of movement, deformities, inflammation, fractures, edema or thropic changes." (Tr. 20.)